Herman E. Goodman ⎫
vs. ⎬ No. 91245.
Jules J. Guerin ⎭

DECISION.

May 15, 1934.

FROST, J. This is an action brought to recover for personal injuries and for damage done to an automobile arising from a collision between plaintiff's Chevrolet coupe and defendant's oil truck, about noon of May 18, 1933, on Main Street in the City of Pawtucket. It was tried to the Court without the intervention of a jury.

As one goes from Providence to Pawtucket he may pass over Main Street which runs in a generally northerly direction. At one point there is a turn in the road to the right or easterly toward the center of Pawtucket. The angle made at this turn is very nearly that of a right angle. The highway that continues from Main Street northerly is called Lonsdale Avenue. The collision between the two automobiles was at substantially the intersection of Main Street and Lonsdale Avenue, although it would seem that both machines at the time of collision were on Main Street and on that portion extending northerly and southerly. There are two street railway tracks in the central portion of Main Street and one track on Lonsdale Avenue. There is a street railway switch on Main Street southerly of the corner mentioned and at an appreciable distance from it, although at just what distance does not appear.

Goodman was driving from Pawtucket westerly on the right hand side of what he termed Lonsdale Avenue. It is evident that he was mistaken as to the name and that in reality he was in Main Street. As he reached the corner, it was necessary for him to make a left turn and proceed southerly on Main Street to reach Providence where he desired to go. At the corner he testified that he could see southerly on Main Street 250 to 300 feet. Goodman proceeded until he was ten feet out on that portion of Main Street that extends northerly and southerly. He was then in the area that would be traversed ordinarily by a vehicle coming northerly on Main Street and continuing on Lonsdale Avenue. The plaintiff stopped in this position, according to his testimony, and at that time the oil truck, proceeding northerly at a rate of 35 miles an hour was 150 feet away. The plaintiff said that he remained in that position and that the truck continued to come on and finally struck his machine.

The operator of the truck testified that he passed an electric car when the latter was 400 to 500 feet from the corner; that he proceeded northerly on Main Street, intending to continue on Lonsdale Avenue; that he slowed up on approaching the corner; that he saw a coupe stopped even with the curb on that portion of Main Street extending easterly and westerly; that the driver kept looking at him; that the coupe suddenly shot ahead right into his path when he was 10 to 15 feet away; that he had no chance to apply his brakes; that he was then travelling 7 to 8 miles an hour.

The plaintiff was supported to some slight extent by the testimony of one Clelland who was a passenger on the electric car, sitting in the front seat on his right hand side. He testified that the oil truck passed the electric car on its left; that the coupe came

to a stop when the truck was about 23 feet away. Clelland said that he was intending to leave the car at the switch. This would indicate that when he saw the accident, the electric car not having reached the point where he intended to leave it, he was a considerable distance away, too far, in fact, to say with accuracy how many feet lay between the truck and the coupe when the latter came to a stop.

A young woman living in a house on Lonsdale Avenue, called by the defendant, also testified that she saw the accident, but the Court thinks she was too far away for her testimony to be of great value.

An investigator for the State Board of Public Roads inspected the brakes of the oil truck immediately after the accident and, as a result, suspended the registration of the truck. The truck was a Packard truck, 4 cylinders, 1919 model. It is clear that this truck was not equipped as the best trucks now are and that it could not stop in as short a distance as more modern trucks can, but it does not appear with any conclusiveness that the brakes were not in a reasonable condition for a truck of that character, age and equipment.

Of the two stories of the accident, the Court thinks that of the operator of the truck is the more reasonable although it is difficult to understand why Goodman should start ahead with the truck so near. Taking the testimony of the operator of the truck as true, there is no testimony tending to show that the operator of the truck had an opportunity to stop. The condition of the brakes is not material on the testimony given by the defendant's witnesses. But assuming that the plaintiff's story is the true and accurate story of the accident, is there ground for recovery? The Court thinks that plaintiff cannot recover on his own testimony. It seems remarkable that the plaintiff should have taken the position that he testified he did take. He left a place of safety, a place where one would ordinarily wait until he saw that he could safely go ahead, make a left turn and continue southerly on Main Street. He deliberately, according to his own testimony, went forward, came to a stop directly in the path of an oncoming truck and at a time when that truck was, as he said, 150 feet away. Just why he should not have continued does not appear. But having taken this position, it was as much his duty to attempt to extricate himself from that position as it was the duty of the operator to attempt to stop, to turn to one side or to do anything else that he might to avoid a collision.

Taking plaintiff's story as true and his distances as accurate, it was the duty of the operator of the truck to turn his machine to one side, to slow down or to stop or to do whatever a reasonably prudent operator would do to avert an accident when it became reasonably apparent that Goodman either couldn't or wouldn't move from the position of danger in which he had placed himself.

*Anna A. Fillmore* vs. *The Rhode Island Company*, (1919) 42 R. I. 102.

Upon the testimony as given, the Court cannot say that the operator of the truck failed in this duty. But however that may be, the Court thinks that the plaintiff's opportunity to avert the accident was as late or later than that of the defendant's servant. Goodman offered no explanation for leaving a place of safety and going into one of danger, nor did he explain why he failed to extricate himself from such a position by either going backward

or forward. He needed to go but a few feet either way to be in a place of safety.

While the facts are quite different, the principle appearing in the Coburn case is applicable.

> *Coburn* vs. *United Electric Railways Company*, (1925) 128 Atl. 435 at 436.

The same principle also appears in *Michael Baryluk* vs. *United Electric Railways Company*, (1933) 53 R. I. 306.

Upon a careful consideration of all the testimony the Court is unable to observe any principle on which the plaintiff is able to recover.

Decision is therefore given for the defendant.

For plaintiff: Ernest L. Shein.

For defendant: John R. Higgins, Silverstein.